Filed 5/8/14  P. v. Gentry CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CORY JAMES GENTRY,<br><br>Defendant and Appellant. | C072735<br><br>(Super. Ct. Nos. 62-104648A<br>& 62-092242B) |

A jury convicted defendant Cory James Gentry of three counts of first degree burglary (Pen. Code, § 459).  Sentencing defendant on this and an unrelated drug possession case, the trial court imposed a state prison term of seven years four months.

On appeal, defendant contends one of the burglary counts should be reversed for insufficient evidence, the trial court erred in admitting his statement that he committed 12 burglaries, and if the statement was admissible, the trial court was required to give a limiting instruction.  We affirm.

1

BACKGROUND

PROSECUTION CASE

*Miners Way Burglary*

On February 16, 2011, Tamra Nemecek arrived at her home at 1299 Miners Way in Roseville around 2:00 p.m. Noticing the outside door to the garage was broken and the door from the kitchen to the garage was open, she called the police. She went into the house and discovered her jewelry box was missing. At trial, Nemecek identified the stolen jewelry box, rings, and some medication she kept in the box.

Meanwhile, Roseville Police Officer Ken Nakamura was patrolling in the neighborhood, which had been hit by a rash of burglaries, when he made contact with Andrew Padilla in response to a report of a suspicious person at a door. Padilla's cell phone contained a text saying someone needed Padilla's backpack. Officer Nakamura heard the dispatch about the Miners Way burglary during his communication with Padilla. He responded to the call, and saw defendant, wearing jeans and a dark sweatshirt, talking on his cell phone in the driveway of 1308 Miners Way. Defendant then went into the backyard of the home.

At about the same time, Mark Onderko, who lived at 1305 Miners Way, saw a man hunched down in front of his truck. The White man was about five feet 10 inches tall, in his early 20's, had medium length brownish blond hair, and wore a zipped up hoodie. After about one minute, the man picked up a wooden box, looked up and down the cul-de-sac, and then carried the box to a neighbor's house, where he went into an alcove to the front door. The man then returned to the front of the house, now without the box, and went around the house, through a gate, and into the backyard. When Officer Nakamura showed up, Onderko directed the officer to the backyard, but the man could not be found. Onderko then directed Officer Nakamura to the box the man hid by the front door. The box was Nemecek's stolen jewelry box.

2

Officer Nakamura, recalling his earlier contact with Padilla and the phone text, was able to link the text message to defendant's name at a nearby address on Crestmont Avenue. Officer Nakamura took Onderko to a field lineup at the Crestmont Avenue address, where he identified defendant as the man with the box. Officer Nakamura also recognized defendant as the person he pursued earlier.

Defendant was arrested, taken to the police station, and questioned that day. He admitted burglarizing the home by forcing the door open with a knife. Defendant said Antonio Dykes dropped off Padilla and took defendant to the area to look for homes to burglarize. Defendant led officers to some stolen items he had hidden, including the location of the wooden jewelry box hidden at 1308 Miners Way, which Officer Nakamura had already found.

*Sheridan Avenue Burglary*

On January 19, 2011, Yvonne Tibbets arrived at her home at 1310 Sheridan Avenue in Roseville and found an unfamiliar "kid" outside her house on a bicycle. The back door to her house was unlocked and a bathroom window was broken. Glass, blood, and a muddy footprint were on the bathroom floor. Several pieces of jewelry and several hundred dollars were missing from her home. Defendant's fingerprints were at the home, and his DNA matched that taken from the blood in the bathroom.

*The "Castle" Burglary*

On February 10, 2011, Sharon Dalton and her husband Paul Dalton lived at 700 Elisa Way, a house known as "Jerry Lee's Castle." The Daltons arrived at their home and found it had been burglarized. Sharon saw the burglar as he came back into the house. According to Sharon, the burglar was of medium height, skinny, had blond hair, and carried bags in his hands. Among the items taken was a pearl necklace.

Paul Dalton testified that the burglar was a skinny young man with blondish hair who moved very quickly. The doors at his home should have been locked, but he found no damage to the doors and windows.

Sharon identified defendant as the burglar at trial. At a photographic lineup conducted on the day she testified, she identified a person other than defendant as the burglar. Paul could not identify anyone at the lineup and could not identify defendant in court.

An officer showed a pearl necklace recovered during the investigation to Sharon, who said it was not hers. Another officer showed jewelry found at Antonio Dykes's house to Sharon for possible identification. Sharon identified a pearl necklace as the one stolen from her home.

The officer returned to Dykes's house and confronted him about participating in the burglaries. Dykes said he got all of the jewelry from defendant. He initially denied participating in the burglaries, but eventually admitted driving defendant and Padilla, although he did not know what he was doing. Dykes did not implicate defendant until he learned defendant was arrested.

Dykes testified under a grant of immunity. He had been convicted of misdemeanor receiving stolen property in connection with defendant's case. He was close friends with defendant; he knew Padilla but was not close to him. He drove defendant and Padilla to the South Cirby area in Roseville to commit residential burglaries so they "could all get loaded." Dykes did not enter the properties, but drove defendant and Padilla there, and kept the stolen property at his home. A police officer came to his home a couple of times and found various pieces of jewelry there. The jewelry, which defendant gave to him, "apparently" was stolen.

In his police interview, defendant explained that one of the group would ring the doorbell or knock on the home's door. They would leave if someone answered. If no one answered, some would act as lookouts while one or two members would enter the home through a back door or by opening or breaking a window. Defendant admitted committing 12 burglaries between August 2010 and February 2011.

4

THE DEFENSE

Testifying on his own behalf, defendant claimed he was at "rock bottom" from late 2010 to early 2011. He was using heroin, had been disowned by his family, and his friends would not talk to him. He stole to support his drug habit. He lived in Sacramento County, but committed the burglaries in Roseville as he thought this would make it harder for the police to find him. He admitted committing the Sheridan Avenue and Miners Way burglaries, but denied committing the Castle burglary.

Dykes drove defendant to the Sheridan Avenue burglary, and defendant and Padilla to the Miners Way burglary. Defendant gave items stolen from Sheridan Avenue to his good friend Dykes. On visits to Dykes's home he often saw items he thought were stolen. Other members of their circle were also thieves.

Defendant admitted being involved in 12 residential burglaries. His statement that he entered all 12 houses was wrong as he was going through drug withdrawal during the interview. He had accomplices on many of the burglaries. Defendant could not recall the specific houses he entered or helped to burglarize. He would have remembered burglarizing a house that looked like a castle.

## DISCUSSION

### I

Defendant contends there is insufficient evidence to sustain his conviction in count two for burglarizing the "Castle." We disagree.

" 'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] We apply an identical standard under the California Constitution. [Citation.] 'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the

5

evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1175, italics omitted.) In reviewing the sufficiency of the evidence, "a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.]" (*Id*. at p. 1181.) We will reverse for insufficient evidence only if " ' " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" ' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

Defendant claims there is no substantial evidence of "solid value" tying him to the burglary of the Castle. He asserts that Sharon Dalton's in-court identification of him as the burglar she confronted was fatally undermined by her identification of another person as the burglar in the photographic lineup. Defendant notes the prosecutor, during closing argument, referred to Dalton's identification testimony as having no value. He further argues that Dykes's testimony does not tie defendant to burglarizing the Castle, as Dykes never testified that defendant told him he committed the Castle burglary. He claims Dykes had an incentive to identify defendant as the sole source of the stolen jewelry in his possession. Noting that the Castle was burglarized on February 10, defendant was arrested on February 16, and Dalton's necklace was found at Dykes's home on February 22, defendant finds there was a six-day period during which defendant could have received the necklace from whoever actually burglarized the Castle and then passed it onto Dykes.

Defendant's attacks on the credibility of Sharon Dalton's identification and Dykes's testimony asks us to reweigh the credibility of their testimony, which we cannot do on appeal. Likewise, accepting his rather elaborate scenario explaining how Dykes got the necklace taken from the Castle from defendant would have us view the evidence in the light least favorable to the judgment.

6

Sharon Dalton identified defendant as the man who burglarized her residence. Her identification of another person in a photographic lineup did not render this testimony impossible or inherently improbable; accordingly, it is substantial evidence supporting his conviction. (*People v. Watts* (1999) 76 Cal.App.4th 1250, 1258-1259.) Dykes's testimony that defendant committed multiple burglaries and gave him the necklace taken in the burglary is further substantial evidence supporting the judgment of conviction in count two. Finally, defendant's confession that he committed 12 residential burglaries in the area and during the time the Castle burglary was committed is additional evidence supporting his conviction.

## II

Defendant contends the trial court committed prejudicial error in allowing the prosecution to introduce his admission to committing 12 burglaries in the area. He argues that the admission was admissible only as uncharged crimes evidence pursuant to Evidence Code section 1101. He claims the statement was admissible as uncharged crimes evidence only to prove identity with respect to the Castle burglary in count two, and identity requires the greatest similarity between the uncharged and charged offenses. Asserting the inference of identity was weak because defendant's statement does not specifically admit to the Castle burglary, he finds the statement was insufficiently relevant to be admitted as uncharged crimes evidence. Defendant concludes that the alleged error requires reversal in light of the inherently prejudicial nature of his admitting to 12 burglaries and its limited probative value.

At the Evidence Code section 402 hearing on defendant's statement, the interrogating officer testified that defendant was suspected of being involved in more than 20 unsolved burglaries in an area bordered by Cirby Way, Sunrise Avenue/Boulevard and Old Auburn Road. Defendant admitted committing 12 residential burglaries in the area between August 2010 and February 2011. Defendant did not

7

provide any more specific information regarding the burglaries. The officer thought defendant gave vague responses because of his drug use.

Arguing against admitting the statement, defense counsel told the trial court defendant's statement admitting to 12 burglaries in the area, "creates minimal probative value because there are no specifics in this particular case. There was no reference to specific addresses, specific facts, specific dates, items that were taken. So, I believe in that sense, to the extent it has relevance, it is extremely minimal."

In rejecting defendant's contention, the trial court ruled as follows: "Well, I find it does have relevance because if [defendant's] saying that he didn't commit this one particular burglary, he's admitting he committed more than the two he's admitting to; in this statement he admits he committed more than those two in the same area during the same time frame. So, that makes it relevant." The trial court then asked defense counsel for his arguments regarding prejudice; counsel asserted admitting the statement would effectively preclude defendant from testifying by inquiring into the uncharged burglaries on cross-examination, forcing defendant to assert his Fifth Amendment privilege. The prosecutor agreed that any cross-examination of defendant would be limited to the charged offenses. The following day, the trial court ruled the high probative value of the statement was not outweighed by any undue prejudice pursuant to Evidence Code section 352, and accordingly admitted it.

Evidence Code section 1101 was never mentioned; the trial court ruled the evidence was admissible to show he admitted committing the count two burglary, and the prosecutor was precluded from asking defendant about uncharged burglaries on cross-examination. Contrary to the premise of defendant's contention, it is clear that the statement was admitted as an admission that he committed the burglary in count two rather than as uncharged crimes evidence under Evidence Code section 1101.

The trial court's decision to admit the statement on this ground was correct. It properly observed that the statement was highly relevant. Unlike the other two charged

8

crimes, defendant did not specifically confess to this burglary. By confessing to 12 residential burglaries in the same area and during the time in which the count two burglary was committed, defendant's statement raises the strong inference that the burglary in count two was one of those 12 burglaries.

Nor was the statement too prejudicial to admit. " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 320.) Where, as here, defendant already confessed to committing the two other charged burglaries and his statement that he committed a total of 12 burglaries in the area is not unduly prejudicial.

Applying the deferential standard of review to Evidence Code section 352 rulings (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 966 [trial court's Evidence Code section ruling not disturbed on appeal absent " ' " 'a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice' " ' "], we conclude the decision to admit the statement was not an abuse of discretion.

### III

Defendant contends the trial court erred in failing to grant his request to give the general limiting instruction, CALCRIM No. 303, regarding his statement admitting to committing 12 burglaries. He argues that if the statement was admissible, "it was only for the limited purpose of proving identity under Evidence Code section 1101(b)" and he was therefore entitled to an appropriate limiting instruction.

As with his claim regarding the admissibility of the statement, defendant's contention here fails because it erroneously assumes could be admitted only as uncharged misconduct evidence. This is wrong and this claim therefore fails.

9

DISPOSITION

The judgment is affirmed.

       NICHOLSON    , J.

We concur:

       RAYE       , P. J.

       HULL       , J.